# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ERIN VOGEL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 6681 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MCCARTHY, BURGESS, & WOLFF, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erin Vogel brought this suit on behalf of herself and a putative class against Defendant McCarthy, Burgess, & Wolff, Inc. (MBW) for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.[1] R. 1, Compl.[2] Vogel alleges that MBW made a false or misleading representation in its initial letter to Vogel when it failed to itemize obscure elements of her total debt. *Id.* ¶ 21. Now, MBW moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 17, Mot. to Dismiss at 1. For the reasons stated below, MBW's Motion to Dismiss is denied.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in Vogel's Complaint.[3] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition to the

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.
[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.
[3]The Complaint includes class allegations, which the Court will not consider for the purposes of this Motion to Dismiss.

allegations in the pleading, documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). According to the Complaint, Vogel received a letter (call it the "Initial Letter") from MBW regarding an alleged debt incurred with Payless Car Rental. Compl. ¶¶ 16-17. The Initial Letter stated that Payless sent an account with a balance of $3,036.83 to MBW for collection. R. 1-1, Compl. Exh. A, 06/02/2017 Initial Letter. The Initial Letter stated that Vogel could dispute the debt, but did not contain an itemized breakdown of the amount owed. *Id.*

Following the instructions in the Initial Letter, Vogel disputed the debt with MBW. Compl. ¶ 18. The correspondence continued when MBW responded with a debt verification letter (call this the "Debt Verification Notice"), which enclosed an itemized receipt from Payless. *Id.* ¶ 19. Unlike the Initial Letter, the itemized receipt broke down the total amount of debt, including line items for $789.00 in "Misc. Charges," $385.00 for a "Late Fee," and $582.75 in "Optional Services." Compl. Exh. B, Debt Verification Notice.

After receiving the itemized receipt, Vogel filed this lawsuit, alleging violations of § 1692e of the FDCPA. Compl. ¶ 25. She claims that MBW attempted to collect an inflated amount with improper add-on charges, and thus MBW made a false or misleading representation. *Id.* ¶¶ 21-22. In response, MBW asserts that the amount stated in the Initial Letter is not misleading, because it reflects the exact amount of debt communicated to MBW by Payless. Mot. to Dismiss at 3. MBW now moves to dismiss the Complaint for failing to state a claim, arguing that its representations were not false or misleading. *Id.*

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

## III. Analysis

### A. False or Misleading Representation

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To this end, § 1692e of the FDCPA prohibits "the false representation of … the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Under this section of the FDCPA, a debt collector violates the statute if it makes a materially false or misleading representation of the debt. *Id*. To assess whether a statement is false or misleading, courts view the debt collector's representations "from the standpoint of an unsophisticated consumer." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004).

Viewed from the perspective of an unsophisticated consumer, even an *accurate* representation of the total amount of the debt owed can violate the FDCPA. As pertinent to Vogel's case, an accurate *total* might be confusing if the nature of its *individual* components are masked. For example, in *Fields v. Wilber Law Firm*, the debt collector sent a dunning letter to the debtor (Fields) with an "Account Balance" of $388.54. 383 F.3d at 563. But that account balance included more than just the original debt of $122.06 plus interest—it also included $250 for attorneys' fees, which the letter did not itemize separately. *Id*. The Seventh Circuit held that even though Fields had agreed to pay attorneys' fees in the initial contract—and indeed the debt collector was obligated to include the amount of those fees in the letter to accurately state the total debt amount—the dunning letter was still misleading to the unsophisticated consumer because "[n]owhere did [the debt collector] explain that it

4

was seeking attorneys' fees of $250." *Id.* at 566. The Seventh Circuit concluded that the failure to identify the amount in attorneys' fees "could conceivably mislead an unsophisticated consumer," because "the debtor … might logically assume that she simply incurred nearly $400 in charges." *Id.*

The case of *Acik v. I.C. System, Inc.* presented a similar problem. 640 F. Supp. 2d 1019 (N.D. Ill. 2009). There, the dunning letter was misleading because the $78.50 in "Additional Client Charges" included both $18.50 in interest and a $60 collection fee. *Id.* at 1024. By failing to distinguish between the interest charges and the collection fee, the debt collector did not clearly and fairly communicate the debt "so that [the debtor] could ascertain the fees' validity." *Id.* at 1025.

Those two cases show why, at the pleading stage, Vogel has alleged enough to state a plausible claim. Remember that the Initial Letter informed Vogel only of the total amount—$3,036.83—and it was not until the Debt Verification Notice that MBW provided information as to each individual line item. *Compare* Compl. Exh. A, 06/02/2017 Initial Letter *with* Compl. Exh. B, Debt Verification Notice. Only then did MBW communicate that the total amount included not only the original rental vehicle charges, but also additional items like "Misc. Charges," "Late Fee," and "Optional Services." *Id.* So, just as the dunning letters in *Fields* and *Acik* could be considered misleading, it is plausible that MBW's Initial Letter was misleading because an unsophisticated consumer could be confused as to how Payless or MBW arrived at the total amount of $3,036.83. And the lack of itemization limited Vogel's ability to understand and challenge the validity of the individual charges, similar to *Acik*,

5

where the debtor could not dispute the collection fee itself because it was generally labeled "Additional Client Charges." *See Acik*, 640 F. Supp. at 1024-25.

MBW argues that it was not required to itemize the debt in the Initial Letter, because the Seventh Circuit has stated that "a debt collector need not break out principal and interest; it is enough to tell the debtor the bottom line." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). *Hahn* essentially stands for the proposition that principal and interest need not be broken out in a dunning letter, because even an unsophisticated consumer can understand that the total amount due includes both principal and interest. *Id; see also Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 646 (7th Cir. 2009) ("The unsophisticated consumer, with a reasonable knowledge of her account's history, would have little trouble concluding that the principal balance included interest.") (cleaned up).

Although the Seventh Circuit has recognized that interest may be included in a total amount undifferentiated from the principal, the same cannot be said for fees and other additional charges—even ones explicitly agreed to at some point. Whereas an unsophisticated consumer with "rudimentary knowledge about the financial world" can reasonably understand that an amount includes interest where the contract provides for interest charged at a set rate (such as a *per diem* rate), *Wahl*, 556 F.3d at 645 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)), *Fields* cautions that other miscellaneous fees and charges are a different story. *Fields* stands for the proposition that even agreed-on fees and charges must still be "clearly and fairly communicate[d]" because the unsophisticated

6

consumer may not understand the basis for calculating the specific amounts charged. *Fields*, 383 F.3d at 565. Put another way, at the very least a debt collector must identify charges that an unsophisticated consumer cannot readily calculate, even ones the consumer may implicitly know they owe. For instance, debt collectors must explain or itemize service fees that are not based on a known rate, but rather estimated or assessed by the creditor or debt collector. *See id*. Plus, it is perfectly plausible, at least at the pleading stage, that presenting a total debt amount without a breakdown of charges and fees is misleading to the unsophisticated consumer. *Acik*, 640 F. Supp. 2d at 1024-25.

In light of this distinction between interest (which is readily known and calculable by the unsophisticated consumer) and additional fees and charges (which plausibly might not be), the "Misc. Charges," "Late Fee," and "Optional Services" in Vogel's account take on a different character than that suggested by MBW. At the pleading stage, the Court must view the allegations in Vogel's favor. And in that light, the charges fall readily in the category of charges that require further explanation by the debt collector—especially if plaintiffs like Vogel are to be able to dispute their debts. Absent facts to the contrary, an unsophisticated consumer could be in the dark on how the total amount, as well as the separate amounts for "Misc. Charges," "Late Fee," and "Optional Services," were calculated. Like the debt collector in *Acik*, MBW "declined to take the safe route suggested by *Fields*" of explaining the individual elements of the debt. *Acik*, 640 F. Supp. 2d. at 1024.

7

MBW offers one more argument against *Fields*. In *Fields*, MBW says, the debt collector (which was a law firm) picked the amount of attorney's fees to add, whereas here MBW simply relayed the total amount of debt communicated to it by Payless. But that is neither here nor there for purposes of evaluating whether the representation could mislead an unsophisticated consumer. The FDCPA is a strict liability statute, so debt collectors "are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805 (7th Cir. 2009) (citing *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)). So even if MBW did not intend to mischaracterize Vogel's debt, misrepresenting the debt's character in the Initial Letter constitutes a violation of the FDCPA in and of itself. Maybe MBW will be able to present a bona fide error affirmative defense,[5] but that is for later (precisely because affirmative defenses are not typically decided at the pleadings stage, as discussed below). For now, it does not matter whether the additional charges were assessed by the creditor or the debt collector; what is important is whether the amount stated in the letter may be readily calculated and understood by the unsophisticated consumer. Because MBW's Initial Letter failed to clearly communicate the character of the debt, the Complaint plausibly states a claim for relief for an FDCPA violation.

---

[5] As an early take on this possibility, MBW would have to show that it had processes in place in which Payless regularly reported to MBW only readily calculable (by an unsophisticated consumer) charges and fees.

8

**B. Materiality**

In addition to arguing that it did not misrepresent the debt, MBW also contends that the Complaint fails to state a claim because Vogel does not allege the lack of itemization influenced her decision-making with respect to the debt. Mot. to Dismiss at 5. This is a materiality argument: the Seventh Circuit has held that only *materially* false statements are actionable under Section 1692e(2)(A). *Hahn*, 557 F.3d at 757-58. A "false statement is material if it has a natural tendency to influence, or is capable of influencing" the pertinent decision. *Neder v. United States*, 527 U.S. 1, 16 (1999) (cleaned up) (cited by *Hahn*, 557 F.3d at 757). Consumers "don't need protection against false statements" that "would not influence a consumer's decision." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009).

Take, for example, in *Hahn*, where the Seventh Circuit said that the failure to distinguish between the principal and the interest parts of the debt would not have influenced the decision-making of even an unsophisticated consumer, because (at least as between principal and interest), "[a] dollar due is a dollar due." 557 F.3d at 757. In contrast, in *Lox v. CDA, Ltd*, the debt collector's dunning letter implied that the collector could charge the debtor the attorneys' fees associated with a lawsuit for nonpayment. 689 F.3d 818, 827 (7th Cir. 2012). The Seventh Circuit held that the dunning letter was materially misleading—even though it correctly communicated the total amount of debt—because the language insinuating the piling-on of attorneys' fees for a lawsuit "would have undoubtedly been a factor in [the debtor's]

9

decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest." *Id.*

At the pleading stage, the Complaint sufficiently alleges materiality. It is a reasonable inference, as Vogel asserts, Pl. Resp. Br. at 9, that a consumer who was notified of charges like "Misc. Charges," "Late Fee," and "Optional Services" would react differently from a consumer who was not alerted to those charges and fees. This is especially true with "Misc. Charges," which (at this stage of the case) have no explanation of what they might entail and total over $700. Vogel might have never known of that potentially inflated addition (if that is what it is) to her original debt if she had never disputed the amount and seen the itemized breakdown. Compl. Exh. B, Debt Verification Notice. Because an informed consumer would be able to challenge the individual charges—as opposed to an uninformed consumer, who would not know the itemization of charges—the listing of individual line items is capable of influencing the debtor's decision-making. In short, the statement of the debt as one lump sum of $3,036.83 is materially misleading (at least it is plausibly so) on the character of the debt, because it could influence what a debtor would do in reaction to the debt-collection attempt.

**C. Bona Fide Error Defense**

Finally, in its briefing, MBW hints at the bona fide error defense. In its answer, MBW explicitly alleges the defense (which mitigates liability for debt collectors who unintentionally make a factual error despite maintaining processes designed to avoid such errors, *see Jerman v. Carlisle*, 559 U.S. 573, 589 (2010)) in its answer. R. 18,

Answer ¶ 38. The briefing is less clear. *See* Mot. to Dismiss at 5. Even if MBW did assert the bona fide error defense as a basis for dismissal, "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Even if MBW is asserting the defense in the dismissal motion, it does not matter, because that issue generally cannot be resolved at the pleading stage.

### IV. Conclusion

For the reasons stated above, MBW's motion to dismiss is denied. The status hearing of September 6, 2018 is accelerated to August 13, 2018, at 10:15 a.m. The parties shall confer on a discovery schedule on the merits of the individual plaintiff's claim and the propriety of class certification. The last thing that happened was disclosure of ESI, so the starting point is the issuance of a first-round of written discovery requests to fill gaps in the Mandatory Initial Discovery disclosures, and setting a fact discovery deadline. A joint status report is due by August 10, 2018.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 6, 2018